## METCALF *v.* WATERTOWN.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
WESTERN DISTRICT OF WISCONSIN.

No. 18. Argued April 18, 1894. — Decided May 14, 1894.

The right of action upon a judgment or decree of a court of record of the
United States, sitting within the State of Wisconsin, is limited by the
Revised Statutes of that State of 1858, to twenty years after the cause
of action accrued.

THIS was an action brought June 29, 1883, in the Circuit
Court of the United States for the Western District of Wis-
consin, by a citizen of Ohio, the assignee of certain persons
who were assignees in different proportions of a judgment for
the sum of $10,207.86, recovered April 9, 1866, in the Circuit
Court of the United States for the District of Wisconsin, by a
citizen of Tennessee against a municipal corporation of Wis-
consin. The petition having been amended, (in accordance
with the opinion delivered by this court when the case was
before it at a former term, and reported in 128 U. S. 586,) by
showing that this plaintiff's assignors were citizens of other
States than Wisconsin, the defendant answered that the cause
of action did not arise within ten years before this action was
brought, and that the action was therefore barred by the
statute of limitations of Wisconsin. The case having been
submitted to the Circuit Court for trial without a jury, that
court, on August 2, 1889, so held, and, having filed findings of
fact and conclusions of law, rendered judgment for the defend-
ant. The plaintiff sued out this writ of error.

The Revised Statutes of Wisconsin of 1849, c. 127, § 41,
applied one limitation to all judgments of courts of record
within the United States, as follows: "Every judgment and
decree in any court of record of the United States, or of any
State or Territory of the United States, shall be presumed to
be paid and satisfied at the expiration of twenty years after
the judgment or decree was rendered."

The Revised Statutes of 1858, c. 138, contain the following provisions :

" SECT. 1.  Civil actions can only be commenced within the periods prescribed in this chapter, except when in special cases a different limitation is prescribed by statute."

" SECT. 14.  The periods prescribed in section one of this chapter, for the commencement of actions other than for the recovery of real property, shall be as follows :

" SECT. 15.  Within twenty years : 1. An action upon a judgment or decree of any court of record of this State.  2.  An action upon a sealed instrument, when the cause of action accrues within this State.

" SECT. 16.  Within ten years : 1. An action upon a judgment or decree of any court of record of any State or Territory within the United States, or of any court of the United States. 2.  An action upon a sealed instrument, when the cause of action accrued without this State."

In the Revised Statutes of 1878, §§ 4220, 4221, the language of the provisions as to actions on judgments is modified, so as to include in the limitation of twenty years "an action upon a judgment or decree of any court of record of this State, or of the United States, sitting within this State ; " and to confine the limitation of ten years to "an action upon a judgment or decree of any court of record of any other State or Territory of the United States, or of any court of the United States, sitting without this State."   By reason of a saving clause in § 4984, the case at bar is not governed by these statutes, but by the statutes of 1858.

*Mr. C. E. Monroe* and *Mr. G. A. Jenks* for plaintiff in error.

*Mr. George W. Bird,* (with whom was *Mr. Daniel Hall* on the brief,) for defendant in error.

MR. CHIEF JUSTICE FULLER, after stating the case, delivered the opinion of the court.

It will be perceived that the questions arising upon the

record in this case relate to the meaning, applicability, and validity of the first paragraph of section 16 of the Revised Statutes of Wisconsin of 1858, which, taken in connection with sections 1 and 14, barred "an action upon a judgment or decree of any court of record of any State or Territory within the United States, or of any court of the United States," in ten years. The contention of the plaintiff is that, under a proper construction of the paragraph, judgments or decrees of the courts of the United States sitting within the State of Wisconsin are not included therein, and that if this were not so, it would be so far unconstitutional. Defendant claims that such judgments or decrees plainly fall within the statute, no room being left for construction; and that it is valid as to suits on Federal judgments or decrees in the state courts, and therefore valid as to suits on such judgments or decrees in Federal courts, under the 34th section of the Judiciary Act of 1789.

By that section it was provided that "the laws of the several States, except where the Constitution, treaties, or statutes of the United States shall otherwise require or provide, shall be regarded as rules of decision in trials at common law in the courts of the United States, in cases where they apply;" and this was carried forward into section 721 of the Revised Statutes. And from the beginning this court has recognized statutes of limitations of actions, real and personal, as enacted by the legislature of a State, and as construed by its highest court, as rules of decision in the courts of the United States. *Bauserman* v. *Blunt*, 147 U. S. 647, 652, and cases cited.

*McElmoyle* v. *Cohen*, 13 Pet. 312, 327, is an early and leading case on the subject cited, and largely quoted from by counsel for defendant. The statute of limitations of Georgia involved in that case required "actions of debt upon judgments obtained in courts other than the courts of this State" to be brought "within five years next after the judgments shall have been obtained," and an action having been brought in the Circuit Court of the United States for the District of Georgia upon a judgment rendered in a court of the State of South Carolina, it was held that the statute could be pleaded

in bar thereof. Mr. Justice Wayne delivered the opinion of the court, and after stating that judgments recovered in one State "are record evidence of a debt, or judgments of record, to be contested only in such way as judgments of record may be, and consequently are conclusive upon the defendant in every State, except for such causes as would be sufficient to set aside the judgment in the courts of the State in which it was rendered;" but that a plea of the statute of limitations was "well settled to be a plea to the remedy, and consequently that the *lex fori* must prevail;" proceeded as follows: "It would be strange, if in the now well understood rights of nations to organize their judicial tribunals according to their notions of policy, it should be conceded to them in every other respect than that of prescribing the time within which suits shall be litigated in their courts. Prescription is a thing of policy, growing out of the experience of its necessity; and the time after which suits or actions shall be barred has been, from a remote antiquity, fixed by every nation in virtue of that sovereignty by which it exercises its legislation for all persons and property within its jurisdiction. This being the foundation of the right to pass statutes of prescription or limitation, may not our States, under our system, exercise this right in virtue of their sovereignty? Or is it to be conceded to them in every other particular than that of barring the remedy upon judgments of other States by the lapse of time? The States use this right upon judgments rendered in their own courts; and the common law raises the presumption of the payment of a judgment after the lapse of twenty years. May they not then limit the time for remedies upon the judgments of other States, and alter the common law by statute, fixing a less or larger time for such presumption, and altogether barring suits upon such judgments, if they shall not be brought within the time stated in the statute? It certainly will not be contended that judgment creditors of other States shall be put upon a better footing in regard to a State's right to legislate in this particular, than the judgment creditors of the State in which the judgment was obtained. And if this right so exists, may it not be exercised by a State's restraining

the remedy upon the judgment of another State, leaving those of its own courts unaffected by a statute of limitations, but subject to the common law presumption of payment after the lapse of twenty years? In other words, may not the law of a State fix different times for barring the remedy in a suit upon a judgment of another State, and for those of its own tribunals? We use this mode of argument to show the unreasonableness of a contrary doctrine. But the point might have been shortly dismissed with this safe declaration, that there is no direct constitutional inhibition upon the States, nor any clause in the Constitution, from which it can be even plausibly inferred that the States may not legislate upon the remedy in suits upon the judgments of other States, exclusive of all interference with their merits. It being settled that the statute of limitations may bar recoveries upon foreign judgments; that the effect intended to be given under our Constitution to judgments is, that they are conclusive only as regards the merits; the common law principle then applies to suits upon them, that they must be brought within the period prescribed by the local law, the *lex fori*, or the suit will be barred."

Reference is also made to *Ross* v. *Duval*, 13 Pet. 45, in which it was held that an act of the legislature of Virginia providing that judgments of any court within the State, when execution had not been issued, might be revived within ten years from that date by *scire facias* or action of debt thereon, and that when execution had been issued and not returned, other executions and proceedings on the judgment might be had within ten years and not after, was a statute of limitations and applicable to a judgment obtained in the Circuit Court of the United States for the District of Virginia. That was no more than applying to the judgments of the United States courts the same rule that applied to the judgments of the state courts, and in neither of these cases did the precise question arise presented in the case before us.

By the act of May 26, 1790, c. 11, 1 Stat. 122, and the supplement thereto of March 27, 1804, c. 56, 2 Stat. 299, now embodied in Rev. Stat. § 905, it is provided that the records and judicial proceedings, not only of the courts of any State, but

also of any Territory or of any country subject to the jurisdiction of the United States, authenticated as therein prescribed, " shall have such faith and credit given to them, in every court within the United States, as they have by law or usage in the courts of the State from which they are taken ; " that is to say, such faith and credit as they are entitled to in the courts of the State, Territory, or other country subject to the jurisdiction of the United States from which they are taken.

In *Dupasseur* v. *Rochereau*, 21 Wall. 130, 135, Mr. Justice Bradley, speaking for the court, said : " The only effect that can be justly claimed for a judgment in the Circuit Court of the United States, is such as would belong to judgments of the state courts rendered under similar circumstances ; " and " it is apparent, therefore, that no higher sanctity or effect can be claimed for the judgment of the Circuit Court of the United States rendered in such a case under such circumstances than is due to the judgments of the state courts in a like case and under similar circumstances." The same views were expressed by the court through Mr. Justice Matthews in *Embry* v. *Palmer*, 107 U. S. 3, 7, 9, 10 ; *Crescent Live Stock Co.* v. *Butchers' Union*, 120 U. S. 141, 146, 147. It cannot be doubted that, in respect of their effect under section 905, the judgments and decrees of the Circuit Courts of the United States are entitled to the same sanctity and effect in the courts of each State, when those courts are held within the State, as their own judgments, nothing more, but nothing less.

So far as that section relates to the effect to be given to the judicial proceedings of the States, it is founded on article IV, section 1, of the Constitution ; but the power to prescribe what effect shall be given to the judicial proceedings of the courts of the United States is conferred by other provisions of the Constitution, such as those which declare the extent of the judicial power of the United States ; which authorize all legislation necessary and proper for executing the powers vested by the Constitution in the government of the United States, or in any department or officer thereof ; and which declare the supremacy of the power of the national government within the limits of the Constitution.

The judicial power of the United States is vested in one Supreme Court and in such inferior courts as the Congress may from time to time ordain and establish. Congress has accordingly established Circuit Courts; the judicial power vested in them extends to controversies between citizens of different States; and the citizens of each State are entitled to the privileges and immunities of citizens in the several States.

It is argued that this legislation, if given the construction contended for, would involve the assertion of power over the Federal courts, and by discrimination impair their jurisdiction and authority; and also in effect deprive the citizens of other States of privileges secured to them by the supreme law of the land; that as long as a limitation prescribed by state law is equally applicable to all judgments rendered within or without a State, there is no discrimination against judgments rendered in the Federal courts; but when there is a discrimination between judgments rendered in the courts of a State and those rendered in the Federal courts held in the same State, it is an attack upon the judicial authority of the United States, and in limitation of the right of citizens to invoke that jurisdiction. Hence, that this statute of 1858, if it have the scope insisted on, cannot apply as a rule of decision in this case under section 721, because the Constitution of the United States otherwise requires; that that section does not concede to the States the right to make laws that in any way discriminate against the judgments of the courts of the United States in a particular State, but simply prescribes the rule that whatever the state laws are in respect of the conduct and course of the judgments of its own courts should be the guide within constitutional limits for the action of courts of the United States in proceedings in respect of the judgments of those courts in that State; and that in that view the first paragraph of section 15, providing that actions could be brought within twenty years upon a judgment or decree of any court of record of Wisconsin, applied, while the first paragraph of section 16 did not apply except in reference to judgments of any court of the United States other than in the State of Wisconsin.

*Massingill* v. *Downs,* 7 How. 760, 766, is cited by plaintiff,

which, however, did not involve the limitation of actions. There a lien upon real estate acquired by virtue of a judgment recovered in the Circuit Court of the United States for the Southern District of Mississippi in 1839, when, by a law of the State, it was a valid lien, was held not to be lost by non-compliance with a subsequent statute of the State, passed in 1841, making it a condition of the validity of liens under judgments theretofore rendered that the judgments should be recorded within four months of the passage of the statute, in the office of the Circuit Court of the county in which the land was. And this court said : "In those States where the judgment or the execution of a state court creates a lien only within the county in which the judgment is entered, it has not been doubted that a similar proceeding in the Circuit Court of the United States would create a lien to the extent of its jurisdiction. This has been the practical construction of the power of the courts of the United States, whether the lien was held to be created by the issuing of process or by express statute. Any other construction would materially affect, and in some degree subvert, the judicial power of the Union. It would place suitors in the state courts in a much better condition than in the Federal courts." *Cooke* v. *Avery*, 147 U. S. 375, 387.

But we do not understand defendant's counsel to contend that a State has power to regulate or vary the proceedings or judgments of the United States courts as such, or that Congress can either delegate its own powers or enlarge those of a State, but that as a mere question of power a State may prescribe limitations upon judgments without regard to the court pronouncing them; that a judgment is simply record evidence of the debt or liability as between the parties; that there is no constitutional prohibition upon the power to limit actions thereon, and that while actions on judgments in the courts of the United States cannot be controlled by the exercise of this power, that result is reached under section 721, which makes the law of the State in that regard a rule of decision.

As a general rule this court follows the decisions of the highest court of a State in the construction of the statutes of

the State, unless they conflict with or impair the efficacy of some provision of the Constitution of the United States or of an act of Congress; but we think we are at liberty, and perhaps required, under the circumstances existing here, to interpret this statute for ourselves.

In June, 1870, the Circuit Court of the United States for the District of Wisconsin, in the case of *Cole* v. *Weil,* Judge Drummond and District Judge Miller holding the court, sustained a demurrer to the plea of the ten years' limitation in bar of an action upon a judgment recovered in the District Court of the United States for the District of Wisconsin. In January, 1885, the Circuit Court held otherwise in the case before us and found for the defendant on the defence now under consideration, and, judgment having been rendered, the cause was brought on error to this court, the record being filed October 9, 1885. On December 10, 1888, that judgment was reversed upon a question of jurisdiction and the cause remanded. 128 U. S. 586. While that writ of error was pending in this court, and in August, 1886, an action was brought in one of the state Circuit Courts against the town of Waterloo, upon, among other causes of action, a judgment obtained in the United States Circuit Court for the District of Wisconsin. To this the ten-year bar was pleaded and sustained, and the case carried to the state Supreme Court, which, September 20, 1887, decided that the judgment came within the words of subdivision one of section sixteen, c. 138, Rev. Stats. 1858, and that the action thereon was barred by the lapse of ten years. *Waterman* v. *Waterloo,* 69 Wisconsin, 260.

In *Ballin* v. *Loeb,* 78 Wisconsin, 404, decided December 16, 1890, plaintiffs obtained judgment against a corporation in the Circuit Court of the United States for the Eastern District of Wisconsin, and execution was issued thereon and returned no property found, whereupon they filed a bill in the state court under a state statute in that behalf for the sequestration of the property of the corporation and to have a receiver appointed in order to a fair and equal division of the assets of the corporation among all its creditors. The question was raised whether they, having obtained their judgment in the

Circuit Court of the United States, could avail themselves of the statutory remedy.

The Supreme Court held that they could, and said : " It is contended by the learned counsel of the appellant that the return of an execution on a judgment in a Federal court will not sustain this action, and that such a judgment is that of a foreign court or the same as one of a sister State. There may have been late decisions to such effect, but the current of authorities, as well as the laws of the United States and of this State, establish the rule that the judgments of the United States courts of the Wisconsin districts are to be treated as domestic judgments of a superior court of this State." The court referred to various acts of Congress under which proceedings and judgments in Federal courts are assimilated to those of state courts, and to the fact that in state courts they " are treated in all respects as to remedies like domestic judgments in the States in which they were rendered;" and after citing to the point that United States courts are not foreign within the State where they are held, *Turrell* v. *Warren*, 25 Minnesota, 9 ; *Wandling* v. *Straw*, 25 W. Va. 692, 705 ; *Thomson* v. *Lee County*, 22 Iowa, 206 ; *St. Albans* v. *Bush*, 4 Vermont, 58 ; *Barney* v. *Patterson's Lessee*, 6 Har. & Johns. 182 ; *McCauley* v. *Hargroves*, 48 Georgia, 50 ; *Williams* v. *Wilkes*, 14 Penn. St. 228 ; *Embry* v. *Palmer*, 107 U. S. 3, thus concluded : " We are disposed to adopt this rule, so well established, as against any adverse decisions, as it appears more in the spirit of comity and reasonable. In this proceeding the judgment of the plaintiff will have the same effect as if rendered by any superior court of this State, because it was rendered in a Wisconsin district of a United States court."

It seems to us that if the Supreme Court had arrived at this conclusion at the time *Waterman* v. *Waterloo* was under consideration, a different result might have been reached. It is true that in that case the Supreme Court said : " That the Circuit Courts of the United States are properly called domestic courts of the States wherein they are held could not possibly change the meaning of this language, ' or of any

court of the United States,' without destroying it entirely. What other United States courts, except the District and Circuit Courts of the United States, render judgments upon which the statute of limitations can run?" But we think we may be permitted to assume that if the Supreme Court had then definitely adjudicated that judgments of the United States courts held in Wisconsin were not to be regarded as those of a foreign court or of a sister State, but were to be treated as domestic judgments of a superior court of that State, it would have found a sufficient subject for the operation of the first paragraph of section 16 in respect of judgments and decrees " of any court of the United States," in the judgments and decrees of such courts when held in other States. Moreover, it should be observed that the question of the power under the Constitution to control in any way or to discriminate as to Federal judgments rendered in the State does not seem to have been brought to the attention of the court and was not adverted to.

Since the domestic character of the Federal courts sitting in the State of Wisconsin is conceded, and the principle fully recognized that their judgments are to be treated in all respects as to remedies like the judgments of the state courts, it would seem to follow that the words " judgment or decree of any court of record of this State" in section 15 of chapter 138 of the Revised Statutes of 1858 included the judgments and decrees of Federal courts rendered within the State, and but for the words " or of any court of the United States," in section 16, there would be no difficulty in arriving at that conclusion. And in view of all the legislation upon the subject, we think we are not obliged to take those words literally, but that they are open to construction.

By the Revised Statutes of 1849 a limitation of twenty years was prescribed for actions upon all judgments of record, wherever rendered, and upon all specialties, wherever the cause of action accrued. Rev. Stats. 1849, c. 127, §§ 14, 20, 41.

By an act of 1866, as amended in 1868, it was provided that executions might be issued any time within five years, and at any time thereafter " upon any judgment which has heretofore

been or may hereafter be rendered or docketed in any court of record *in* this State, . . . *provided*, that no execution shall issue, nor any action or proceedings be had upon any such judgment after twenty years from the time of the rendition or docketing thereof." (Laws 1866, c. 14, p. 16; Laws 1868, c. 11, p. 14.)

The Revised Statutes of 1878 provided that actions must be commenced within twenty years "upon a judgment or decree of any court of record of this State, or of the United States, sitting within this State," and "upon a sealed instrument when the cause of action accrues within this State," with an exception relating to municipal bonds; and within ten years "upon a judgment or decree of any court of record of any other State or Territory of the United States, or of any court of the United States sitting without this State," and "upon a sealed instrument when the cause of action accrued without this State," with a similar exception as to municipal bonds. Rev. Stat. 1878, §§ 4220, 4221.

The provisions of the Revised Statutes of 1858 under consideration (c. 138, p. 821) were that the period of time for the commencement of actions other than for the recovery of real property should be:

"SECTION 15. Within twenty years: 1. An action upon a judgment or decree of any court of record of this State. 2. An action upon a sealed instrument, when the cause of action accrues within this State. .

"SECTION 16. Within ten years: 1. An action upon a judgment or decree of any court of record of any State or Territory within the United States, or of any court of the United States. 2. An action upon a sealed instrument when the cause of action accrued without this State."

Thus it is seen that under the statute of 1849 there was no discrimination; under the statute of 1878 a discrimination was made between causes of action accruing on judgments, decrees, and sealed instruments, within, and without, the State; under the acts of 1866 and 1868 judgments of courts of record in the State were treated alike.

Was it intended by the statute of 1858 to make any other

discrimination than that more accurately expressed in the statute of 1878? Was it intended to discriminate against the judgments and decrees of the Federal courts in Wisconsin as if they were foreign courts or courts of another State? Was it intended to disparage the jurisdiction and authority of the Federal courts? It is said in *Harrington* v. *Smith*, 28 Wisconsin, 43, 59, that "the true rule for the construction of statutes is, to look to the whole·and every part of the statute, and the apparent intention derived from the whole, to the subject-matter, to the effects and consequences, and to the reason and spirit of the law; and thus, to ascertain the *true* meaning of the legislature, though the meaning so ascertained may sometimes conflict with the literal sense of the words."

If we take the words in section 16, "any court of record of any State or Territory of the United States," literally, they include the courts of Wisconsin as they did in the statute of 1849; yet we should say that the first paragraph of section 15 was not thereby repealed, but, on the contrary, that the cases therein mentioned were to be taken as excepted. And so, while the words in section 16, "any court of the United States," are broad enough to cover the courts of the United States in Wisconsin, we do not consider that the latter were embraced thereby, but that section 16 applied to those courts of the United States which were not included in section 15, as those holding courts in Wisconsin were. The distinction intended was between causes of action accruing within, and causes of action accruing without, the State, and the statute of 1878 was declaratory of a meaning which already existed. *Koshkonong* v. *Burton*, 104 U. S. 668, 671, involved a different question, but it will be found that in the statement of the statute of 1858 the distinction was indicated.

We cannot attribute to the legislature of Wisconsin any design to discriminate against the judgments and decrees of the courts of the United States rendered in that State by reducing the statutory period for the commencement of actions thereon to a less number of years than obtained as to the judgments and decrees of the state courts, and so to compel citizens of other States to bring their suits originally in those

courts rather than in the Federal courts, as secured to them by the Constitution, or their own citizens to do so if they had causes of action arising under the Constitution and laws of the United States. We do not entertain the, least idea that the legislature was actuated by any such disposition, and are persuaded that the language of the act of 1858 produced no such result.

We are of opinion that the ten-year bar constituted no defence to the action of plaintiff, and, therefore, the judgment is

*Reversed, and the cause remanded, with a direction to enter judgment for plaintiff on the findings.*